No. 23-2380

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

---

WILLIAM C. FROEMMING,
     Plaintiff-Appellant,

     v.

CITY OF WEST ALLIS, PATRICK
MITCHELL, WAYNE TREEP,
LETE CARLSON, RYAN STUETTGEN,
Defendants-Appellees

---

Appeal From The United States District Court
For the Eastern District Of Wisconsin.
Case No: 19-cv-996
The Honorable Judge JOSEPH P. STADTMUELLER

---

BRIEF AND REQUIRED SHORT APPENDIX OF
PLAINTIFF-APPELLANT, WILLIAM C. FROEMMING

---

WILLIAM C. FROEMMING
Pro Se Plaintiff-Appellant
PO Box 1552
Kapaa, HI 96746
414-979-9459
cadillac1960@yahoo.com

# APPELLANT BRIEF

# DISCLOSURE STATEMENT

As of this date (August 22, 2023), no law firms, partners or associates have appeared for or acted as amicus on behalf of the Plaintiff-Appellant in the case (including proceedings in the district court or before an administrative agency) or are expected to appear in this court. Plaintiff-Appellant William C. Froemming has acted as the sole representative in this case as a pro se litigant and has no plans at this time to solicit other representation.

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Appellant certifies that the following listed persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

**1) Plaintiff-Appellant:**

William C. Froemming, pro se plaintiff

**2) Defendants-Appellees:**

City of West Allis; Patrick Mitchell; Wayne Treep; Lete Carlson; Ryan Stuettgen

**3) Counsel for Defendants-Appellees:**

Kail J. Decker; Rebecca Monti

<u>/s/ William C. Froemming</u>
**William C. Froemming
pro se Plaintiff-Appellant**

# <u>TABLE OF CONTENTS</u>

DISCLOSURE STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

CERTIFICATE OF INTERESTED PERSONS . . . . . . . . . . . . . . . . . . 3

TABLE OF AUTHORITIES     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6

JURISDICTIONAL STATEMENT   . . . . . . . . . . . . . . . . . . . . . . . . . 6

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11-25

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25-26

ARGUMENT   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

A Standard of Review     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  42

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  43

CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(a)(7),

FRAP RULE 32(g) and CR 32(c) . . . . . . . . . . . . . . . . . . . . . . . . . .  44

PROOF OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .45-46

# TABLE OF AUTHORITIES

**CASES**

Holmes v. South Carolina, 547 U.S. 319 (2006) . . . . . . . 329-330

In re Ashley, 513 F.3d 695 (6th Cir. 2008) . . . . . . . 703

In re Carney, 672 F.3d 592 (4th Cir. 2012) . . . . 599-601

In re Murtha, 490 F.3d 261 (2d Cir. 2007) . . . . . . . . . . . . . 268-270

In re O'Neill, 636 F.3d 584 (7th Cir. 2011) . . . . . . 592-593

In re Oil Spill by the Amoco Cadiz, 95 F.R.D. 1012 (E.D. La. 1982) 1020

Pena-Rodriguez v. Colorado, 580 U.S. 469 (2015) . . . . 490

State v. Gentry, 655 N.W.2d 36 (Iowa 2002) . . . . . . 43

Thomson v. Boeing Co., 549 F.3d 1371 (9th Cir. 2008) . . . 1379

United States v. Doig, 510 F.2d 1224 (2d Cir. 1975) . . . . . . . . . 1230

United States v. Grayson, 560 F.2d 848 (5th Cir. 1977) . . . 852

United States v. Hanousek, 668 F.3d 855 (9th Cir. 2012) . . 864

United States v. Hasting, 461 U.S. 499 (1983) . . . . . . . 508

United States v. Johnson, 520 F.2d 1028 (2d Cir. 1975) . . . . 1033

Wallace v. Jaffree, 472 U.S. 38 (1985) . . . . . . . 55

**STATUTES**

28 U.S.C. §1291

28 U.S.C. §1621(1)

28 U.S.C. §1621(2)

18 USC §1512(b)


**OTHER AUTHORITIES**

Ethics 2000 Commission Rule 8.3  . . . . . . . . . . . . . . . Commentary [1]

## <u>JURISDICTIONAL STATEMENT</u>

Pursuant to Rule 3 of the Federal Rules of Appellate Procedure, Plaintiff-Appellant respectfully requests that this Court accept jurisdiction over this appeal from the final order issued by the United States Circuit Court for the Eastern District of Wisconsin on June 14, 2023 in case 2:19-CV-996.

**I.** Jurisdictional Basis

This appeal is properly before this Honorable Court pursuant to 28 U.S.C. § 1291, which grants the Court of Appeals jurisdiction to review final decisions of the district courts, including civil cases.

**II.** Parties and Proceedings Below

**A.** Appellant William C. Froemming was the plaintiff in the underlying civil case before the United States Civil Circuit Court and is a citizen of the United States of America residing in the State of Hawaii.

**B.** Appellees City of West Allis; Patrick Mitchell; Wayne Treep; Lete Carlson; Ryan Stuettgen were the defendants in the underlying civil case before the United States Civil Circuit Court and are citizens/entities of  the United States of America residing in the State of Wisconsin.

**C.** Proceedings:

**1.** The underlying civil case was docketed as 2:19-CV-996 in the United States Circuit Court for the Eastern District of Wisconsin.

**2.** The final order being appealed was issued on June 14, 2023.

**3.** The notice of appeal was filed on July 13, 2023.

**III.** Statement of Compliance with Appellate Rules

The Appellant acknowledges and affirms that all necessary procedural requirements have been met, including filing the notice of appeal within the 30 day time frame prescribed by the Federal Rules of Appellate Procedure.

## STATEMENT OF THE ISSUES

This appeal raises questions based on due process and fair trial violations. Plaintiff also believes laws were broken in these proceedings by both the defense counsel as well as the court.

## I. Due Process and Fair Trial Violations

### A. Attorney Misconduct

**i.** Can officers of the court lie in official filings with the court and in presentations to the jury?

**ii.** Is an attorney allowed to publish in court filings private personal data about an individual without consent nor any reason for such information to be a part of the court record?

### B. Judicial Misconduct/Bias/Prejudice

**i.** Is the court allowed to insult and make demeaning remarks to and/or about a litigant?

**ii.** Is the court allowed to threaten a litigant for asking questions of the court and making objections?

**iii.** Can a court choose to ignore when a witness is lying on the witness stand under oath in their court, and evidence to prove that

witness's testimony is a lie has already been submitted as possible material to be used at trial?

**iv.** Is a court allowed to show prejudice against any litigant?

**v.** Is a court allowed to deny a litigant receiving medical attention when said litigant is bleeding in the court?

**vi.** Is a court allowed to proceed with a trial when neither counsel or plaintiff is present?

**vii.** Is a court allowed to let opposing counsel publish, and refuse redaction, private personal data about an individual without consent nor any reason for such information to be a part of the court record?

**viii.** Is a court allowed to not rule on a motion verbally presented in court?

### C. Transcripts

**i.** Can a trial be fair and oblige the requirements of due process when there is no recording other than that which a human has produced, preventing the vetting of the accuracy of transcripts and proceedings?

### D. Evasive and Incomplete Discovery Responses

**i.** Is a public entity, like a city or police department, allowed to deny access to public files that are sought in discovery that are directly related to the claims of the case in which discovery is requested?

### E. Prevention of jury considering evidence

**i.** Is the court allowed to prevent a jury from deliberating on facts presented at trial?

### F. Equal Access to Public Tools of Litigation

**i.** Can due process be obliged when a litigant is denied equal access to tools provided by the court that opposing litigants have access to?

## II. Laws Believed To Have Been Broken

**A.** Can a court violate 18 USC §1512(b) in the adjudication of a matter before them?

**B.** Can a court violate 18 USC §1512(c) in the adjudication of a matter before them?

**C.** Can a court violate 18 USC §1512(d) in the adjudication of a matter before them?

**D.** Can a court violate 18 USC §1512(k) in the adjudication of a matter before them?

**E.** Can an officer of the court appearing as counsel violate 18 USC §1512(b)?

**F.** Can an officer of the court appearing as counsel violate 18 USC §1512(c)?

**G.** Can an officer of the court appearing as counsel violate 18 USC §1512(d)?

**H.** Can an officer of the court appearing as counsel violate 18 USC §1512(k)?

**I.** Can an officer of the court appearing as counsel violate 28 U.S.C. §1621(2)?

## <u>STATEMENT OF THE CASE</u>

Plaintiff-Appellant William C. Froemming (hereafter referred to as "plaintiff") filed a claim against defendants City of West Allis; Patrick Mitchell; Wayne Treep; Lete Carlson; Ryan Stuettgen (hereafter referred to as "defendant(s)") on July 12, 2019 under 42 U.S.C. § 1983. In prosecuting this case, plaintiff was subjected to prejudice from the court, witnessed lies by the opposing counsel and defendants being presented to and accepted by the court and laws being broken by both

the court and the defense counsel thereby violating plaintiff's rights to due process and a fair trial.

Court first showed it's bias in the scheduling hearing on October 16, 2019[1]. At that hearing, plaintiff was told he would need to file his papers with the court "just like a prisoner"[2], was called a fool by the court in a passive aggressive fashion[3] and was denied access to a the CM/ECF filing system that would have helped to level the playing field with the defense counsel[4].

Depositions were taken on January 27-28, 2023 in Milwaukee, WI at the law offices of Roney & Knupp. Deposed were all defendants and Assistant City Council Nick Cerwin. Plaintiff was also deposed by defense counsel.

Discovery was initiated on March 22, 2020 with a request from plaintiff. Like the FOIA requests that had been filed by plaintiff when he was being prosecuted by the City of West Allis for non-criminal violations, the answers to discovery were evasive and incomplete.

---

[1] ROA 2:19-CV-996 #50
[2] ROA 2:19-CV-996 #50 at 6 6
[3] ROA 2:19-CV-996 #50 at 7 12-16
[4] ROA 2:19-CV-996 #50 at 5 23-25, at 6 1-10

As the case progressed, the world was hit with the Covid19 pandemic that shut down nearly everything. As a result, the case was delayed to accommodate the issues associated therewith.

Details of the problems with the discovery responses can be found in the Motion To Compel filed on August 22, 2022 by plaintiff in the US Circuit Court[5] underlying case. On September 2, 2022, plaintiff filed a motion for adverse inferences[6] on the unprovided information from the discovery requests. No response to either the motion to compel or the motion to impose adverse inference on the unprovided information had been issued as of the September 13, 2022 pre-trial hearing. It should be noted that at no time did the court impose any discovery time limits, nor did the defense and plaintiff agree on any deadlines for the discovery process and according to the plaintiff's understanding, FRCP 37 allows discovery to persist until 30 days prior to trial. At the pre-trial hearing, when asked about compelling the defense to comply fully with the discovery request, the court responded with "That train, Mr. Froemming, left the station about 18 to 24 months ago. And the City stands on the responses that they provided to you."[7]. The problem with

---

[5] ROA 2:19-CV-996 #35
[6] ROA 2:19-CV-996 #40
[7] ROA 2:19-CV-996 #51 at 11 1-3

such logic is, the discovery response was evasive and incomplete, was filled with flat out lies and the court had been told as much in the motion that it never ruled on. Now the court is telling me there was some imaginary deadline somewhere in the range of 18-24 months prior during the worst pandemic the world has seen in our lives. At the same time, the court is indicating that the evidence that has been presented does not show any patterns, but the very data (complaints filed against WAPD officers) that would have shown a pattern if it did exist were being withheld in the discovery process.

On September 23, 2023 plaintiff filed a motion[8] to disqualify defense counsel. The lies, deception, unethical and immoral actions they had engaged in up to that point were detailed in that motion and the circuit court chose to do absolutely nothing about it.

On February 13, 2023 the trial in the underlying case began. After some formalities, the court presented the plaintiff and defense counsel with jury instructions prepared by the court. Those draft jury instructions had only excessive force claims listed and nothing about the patterns of lying and evidence destruction in this case. When queried about the case seeming to be reduced to excessive force only, the

_____

[8] ROA 2:19-CV-996 #45

court indicated that it was "left open" at the September 13, 2022

pre-trial conference. "Well, I left open in a summary judgment

order the matter of, as the Court recalls, whether there were

claims with respect to --"[9]. The other two claims that were supposedly

"left open" but were not on the jury instructions were false testimony

and tampering with the evidence. As plaintiff questioned the court

about this issue[10], the court abruptly adjourned to await the arrival of

the jurors without allowing me to finish my queries and understand

why this information was not included on the jury instructions.

In the court's introduction to the jurors, he tells them only of the

excessive force claims and mentions nothing of the false testimony or

evidence tampering charges that were supposedly "left open" and their

inclusion to be determined by what is presented at trial.

The court calls for a sidebar before plaintiff and defendant begin their

strike process, and after concluding that business, while still in the

sidebar, plaintiff expressed to the court, my continued concerns about

why those charges are not included in the jury instructions and being

presented to the jurors as being a part of this case. The court begins

---

[9] ROA 2:19-CV-996 #62 at 6 20-22
[10] ROA 2:19-CV-996 #62 at 9 1-13

seething at plaintiff in a hushed yell, with spittle streaming from his mouth landing on my hand and suit, and he tells me that "If you continue to argue with me Mr. Froemming, I will have you put in the custody of the US Marshals service and you will spend the rest of the trial in their hands". This shook and intimidated me and caused me to be frightened of raising objections and arguments that plaintiff has every legal right to raise. At no time was plaintiff disrespectful to the court and was simply trying to understand why some things were happening that did not make sense to plaintiff. It was due to this intimidation and threat that plaintiff timidly asked the court to once again give me clarification on this issue once the jury had been selected and the court dispensed with the formalities, plaintiff queried again on the topic of the claims being addressed as follows:

"I understand that this doesn't sit well with you, but at the same time I feel it's my right to be able to ask for this. I -- I believe that a mistrial is in order because I do not believe that the September 13th transcript dismissed those charges, and I apologize that you don't agree and you feel I'm being argumentative, but that's just the way I read it. I don't see it the same way as you do. And by moving forward with this

trial without those charges, I've spent 90 percent of my time preparing for those charges. It is what the case was more about to me than anything else. And, you know, to find out this morning that those are no longer charges that are -- that we're going to be addressing I believe is -- is not correct."[11]. After indicating in his response that these jury instructions were only a draft and were not final, plaintiff believes the court again insulted him and plaintiff believes the transcription is incorrect (here and in several other places but plaintiff has no way to verify such claims considering there is no court recording available other than the transcript). It reads as follows "The judge didn't fall off the turnip truck. You think you have evidence that supports what's left, you're free to advert to it, whether during your testimony or the testimony of the officers. I'm sure the city will object and we'll hear both you and they."[12] but what plaintiff believes he actually said, as an insult to me and not himself, was "Did you just fall off a turnip truck. You think . . .".

Plaintiff questioned five witnesses and in the process of displaying to the jury the lies that were told and the evidence that was destroyed in

---

[11] ROA 2:19-CV-996 #62 at 56 5-17
[12] ROA 2:19-CV-996 #62 at 57 10-14

the underlying case, the defense counsel and defendants engaged in additional new lies proving that even if a pattern was not able to be shown already, it certainly was showing itself right here in this courtroom.

Many of the defendants gave their lying explanations of why what they said one day under oath was the opposite of what they said another day under oath. Defendant Treep introduced a new lie when he claimed that the blue light emitting from the windshield of his squad car was simply pixelation in the video, and had the jury been able to review that video, they would have seen the truth. Another new lie evolved when plaintiff was questioning Captain Beyer. During that exchange, it was revealed that the response to the discovery requested by plaintiff in this case was *not* produced by the WAPD records division, nor did they sign for it's validity, but was instead just a slightly modified version of the FOIA requests from 2018[13] signed by defense counsel. The defense counsel chose to not properly solicit from the records department the requested information in the formal discovery request and instead just passed on the evasive and incomplete responses from 2018. Recall that issues with the discovery response

---

[13] ROA 2:19-CV-996 #62 at 182 22-24

were brought to the courts attention in the Motion to Compel filed by the plaintiff on August 22, 2022 and the court chose to do nothing about it. In addition, defense counsel indicates that their interrogatory response was updated in August 2022, when the court and defense is telling me it is too late to get them to give me the information requested. The court ultimately orders defense counsel to prepare a stipulation statement[14] that will be presented to the jury on the morning of February 14, 2023 explaining that they had prepared that discovery response and that they had made a mistake. And that very mistake had been pointed out to the court in the Motion to Compel as well as in the Motion to Disqualify Counsel, both of which the court denied with, at best, questionable logic.

Then when defendant Patrick Mitchell is on the stand, he lies about his response to plaintiff's complaints filed against the other police officers again showing a continued pattern of lies from the defendants. When the plaintiff moves to show the official response from this witness, which would expose his lie, the court chooses to disregard that evidence, already in the courts system of files that might be presented as evidence for trial, and forces the plaintiff to abandon the line of

---

[14] ROA 2:19-CV-996 #62 at 190 1-7

questioning that would show the continued pattern of lies by defendants and their counsel in this case in the past and even on this day.

After the jury was dismissed for the day, the court indicated a belief that the plaintiff had presented no evidence to prove any of his claims, but was inclined to let the jury "take a crack" at the excessive force claims, even though 99% of the questioning that day was based on inconsistent testimony/lies and destruction of evidence. This is after the court had allowed witnesses to lie on the stand in this court under oath.

Plaintiff went to his hotel room across the street from the courtroom boiling with anger over what the court had done that day. After having dinner, plaintiff began to drink and from 9pm onward, plaintiff has no recall of what transpired until he woke up in the emergency room of Froedtert hospital with injuries to his face and head. Having no idea what had happened and having been paranoid of retaliation from the filing date of this case as stated in the original claim, plaintiff assumed he must have been attacked. After being released from the emergency room, plaintiff returned to the hotel, talked to security at hotel as he felt there may have been an intruder in his hotel room, took a shower and went across the street to be in the courtroom by 9am as set on the

courts schedule. Upon going through security, one of the guards indicated that there was blood dripping from the back of plaintiff's head. Guard asked if he would like to see the courthouse nurse and plaintiff explained that he felt obligated to be in the courtroom at 9am and it was currently 8:56am. Plaintiff assumed the court would pause to allow him to have the bleeding wound addressed once this medical situation was presented to the court. As plaintiff entered the courtroom, he expressed to defense counsel his concern that he felt he had been attacked the night before. He made no accusations of anyone but did note that he had in is initial complaint noted that he was worried about being targeted for taking to account a police department. Bailiff gave plaintiff instructions to cease from approaching the defense counsel table and plaintiff complied. When the court came to order, plaintiff indicated to the court that he believed he was attacked and that it could be related to the case. Plaintiff also made the court aware that he was still bleeding. Here again, plaintiff believes that the transcript is not word for word accurate but we have no way to verify such information. Court acted as if nothing had happened and moved on with the case proceedings. Plaintiff pleaded with the court to pause the trial and

allow him to seek some medical attention for the wound that was still bleeding on the back of his head. Defense counsel started expressing doubt that the plaintiff could have been released from an emergency room in such a condition. The court responded with "We're ready to proceed."[15] as if nothing was amiss or any medical situation existed even as plaintiff was continuously dabbing the back of his head with tissues to absorb the blood seeping from his wounds. In response to defense counsel's doubt that plaintiff had been in the emergency room, he offered them his discharge papers to verify that he had just 90 minutes ago been released from the emergency room. Plaintiff tossed the discharge papers onto defense counsels table as bailiff continued to instruct plaintiff to not approach that table.

    Judge questions defense counsel about their stipulation paper and associated materials and then requests that the jury be called in. Plaintiff indicates to the court that he should be allowed to hear this information before it is presented to the jury. Court concedes and asks defense counsel to read the stipulation. After defense counsel reads stipulation, plaintiff points out that what she says in this document is simply not true. She continues to claim that the log file provided was for

---

[15] ROA 2:19-CV-996 #63 at 242 22

a dashcam video, but it was not. The log file provide was for a 5 second logo that is generated along with each dashcam video. This had already been addressed in August of 2022 and the court did nothing about it, and now defense counsel is being allowed to tell yet another lie, this time directly to the jury as the court continues to pay no heed to the medical situation being suffered by the plaintiff. Plaintiff states to court "And I have a medical emergency. I am bleeding." and the court's response is "I don't see it that way."[16]. The court moves forward with the proceedings.

Court then uses hearsay (judge was not in the courtroom at the time plaintiff first entered and was discussing with defense counsel what had happened) stating "No, the manner in which you discussed matters with counsel and the court staff, coming into the courtroom yelling like a raving maniac."[17]. Plaintiff then moved for a mistrial and the court responds not with a denial of motion but instead with "You're out of order, Mr. Froemming"[18]. Court then allows defense counsel to present the lie of the stipulation to the jury. This is after it has been pointed out to the court that what she claims in this stipulation is not factual.

---

[16] ROA 2:19-CV-996 #63 at 245 20
[17] ROA 2:19-CV-996 #63 at 246 16-18
[18] ROA 2:19-CV-996 #63 at 246 25

Plaintiff asks court to explain to the jury why this "stipulation" is not

factual and he does so with the following statement "I don't have any

additional evidence, but I can say that it does not refer to sergeant -- or

officer Stuettgen's video, or Stuettgen's video. It actually refers to

the file that I showed yesterday which is nothing but a five-second video

file of the DVR system that they used. It doesn't refer to that. So she's

lying once again in this document as she has lied in many other

documents throughout this proceedings."[19]. Plaintiff again objects to

proceeding and the court asks defense counsel if she want to clarify

anything in her stipulation statement. She indicates to the jury that the

log file was for a video in the same folder and therefore the same thing

and uses phrases like "I guess that's what I meant" and "and so

apparently the video log is specifically related to that face video".[20] So

she is telling the court and the jury that the log file she claims in

discovery response and in her stipulation letter is not in fact a log file

for anybody's squad video. But it was in the same folder so by her

standards it is the same thing.

---

[19] ROA 2:19-CV-996 #63 at 248 12-19
[20] ROA 2:19-CV-996 #63 at 249-250

At this point, the plaintiff packs up his papers and computers and exits the courtroom to address his medical needs. Just keeping pressure on the wound at that point was a medical need that would interfere with being able to function as a pro se plaintiff. To not let the plaintiff have a pause in the proceedings to address this issue is not only inhumane, but immoral and reprehensible at the deepest levels especially considering plaintiff was and still is on blood thinners due to a heart attack suffered on June 12, 2022 of which the court was made aware (and made no concessions for when travel necessities were considered for the pre-trial conference).

## SUMMARY OF ARGUMENT

Plaintiff believes that multiple due process violations occurred in the proceedings and processes of the underlying case. Plaintiff also believes that Federal laws were violated by many of the actions taken by defense counsel, defendants and the court. Due to these violations and actions Plaintiff believes that his civil right to a fair trial was violated and is therefore subject to de novo review.

Plaintiff also contends that significant bias was displayed by the court in favor of the defense and in negativity towards the plaintiff in both oral statements made, written statements made as well as rulings, interfering with a fair trial and violating due process. If we had the luxury of recorded audio of the events, plaintiff could also be able to display the tone of voice by the court further reinforcing the negative bias towards the plaintiff.

## ARGUMENT

### Attorney Misconduct

Attorney misconduct is an egregious violation for several reasons. Among these reasons are the fact that these individuals are entrusted with powers that can change peoples lives, and misuse of such powers can have severe consequences for individuals and entities. As a result, abuse of this power should be punished similar to breaking traffic regulations in a construction zone, all fines and penalties are doubled. But as we see in the code of ethics from the ABA, this self regulated industry is not subject to the severe punishments that many may argue is appropriate.

Ethics 2000 Commission Rule 8.3:

> Self-regulation of the legal profession requires that members of the profession initiate disciplinary investigation when they know of a violation of the Rules of Professional Conduct. Lawyers have a similar obligation with respect to judicial misconduct. An apparently isolated violation may indicate a pattern of misconduct that only a disciplinary investigation can uncover. Reporting a violation is especially important where the victim is unlikely to discover the offense.[21]

To comply with this ethics code the plaintiff believes the court in the underlying case should have reported that which the plaintiff made the court aware of in the Motion to Compel[22], Motion for Adverse Inference Instructions[23] as well as the Motion to Disqualify Counsel[24]. Plaintiff also contends that the evidence presented herein should be forwarded to the ABA Ethics Committee as well considering the blatant and repeated lies as documented throughout these proceedings. Regardless of whether these actions are investigated by the appropriate bodies, the lies as well as evasive and incomplete actions by the defense counsel prevented the plaintiff from his rights to due process and a fair trial by

---

[21] Ethics 2000 Commission Rule 8.3 - Reporting Professional Misconduct [1]
[22] ROA 2:19-CV-996 #35
[23] ROA 2:19-CV-996 #40
[24] ROA 2:19-CV-996 #45

deceptively  influencing the court as well as preventing the jury from hearing all the true facts of the case.

United States v. Doig indicates "We hold that an attorney's knowing and willful misrepresentation in an official filing may be grounds for a new trial."[25] and the plaintiff deserves such based on this issue alone.

United States v. Grayson states that "We hold that an attorney's knowing and willful misrepresentation in an official filing may be grounds for disbarment."[26] and we know for a fact that on at least one occasion, defense counsel Rebecca Monti was lying. This would be the case of her presenting the stipulation letter as ordered by the court. That stipulation letter repeated the same lie that had already been pointed out in the Motion to Compel[27] as well as the Motion to Disqualify Counsel[28], yet she chose to put the same lie into the letter that was to be read to the jury. When confronted on this issue, she admitted that it was not actually a log file for one of the dashcam videos, but instead was a worthless video file in the same folder as the dashcam video. This proves that she was well aware of not being truthful and she did so intentionally to gain favor with the court and

---

[25] United States v. Doig, 510 F.2d 1224 (2d Cir. 1975) at 1230
[26] United States v. Grayson, 560 F.2d 848 (5th Cir. 1977) at 852
[27] ROA 2:19-CV-996 #35
[28] ROA 2:19-CV-996 #40

the jury by not revealing the whole truth which was, they did not comply with the discovery request that was made and lied about having done so. To add insult to injury, the court accepted her lie due to her being an officer of the court "And I accept your offer as an officer of the court that this was a mistake . . ."[29] but gave no attention the next day to the fact that she was still disseminating what had already been pointed out as false information. For this reason alone, allowing defense counsel to lie to the court and the jury, is grounds for de novo consideration and sanctions against this officer of the court.

This bad practice discovery response also prevented plaintiff from being able to question Captain Beyer about the records requests and the missing information. Plaintiff was not allowed to confront the perpetrators of the acts plaintiff was claiming violated his rights. This was due to the defense counsel Rebecca Monti having appropriated previous responses from FOIA requests and signing her name to them as discovery responses. Those discovery responses were evasive and incomplete and help to illustrate the information that was destroyed or intentionally withheld from plaintiff when he was being prosecuted by the defendant City of West Allis. This is also another example of the

---

[29] ROA 2:19-CV-996 #62 at 191 1-2

pattern of lies due to the fact that one of the discovery requests was as

follows:

> *8. Log information including specific user access by name and
> modifications made regarding the dashcam recordings that were
> modified on July 20, 2016 related to this case. These dashcam
> videos were recorded on July 14, 2016, and all copies I have
> received indicate a "Last Modified" date of July 20, 2016.
> Therefore, someone altered these videos in some way on July 20,
> 2016. I have been told all along that I received exact copies of the
> originals, but the originals would have a last modified date of July
> 14, 2016 at approximately 3:30 am because that is the last time at
> which any file should have been "Modified". The stop of the
> recording is the end of all legal "Modifications".*

There are actually multiple lies in the discovery response that was

provided which are covered in the Motion to Compel[30] and the Motion to

Disqualify Counsel[31], showing a continued pattern of lies by the defense

counsel.

There are additional defense counsel misconduct allegations not

documented here, but clearly laid out in the Motion to Compel[32] and the

---

[30] ROA 2:19-CV-996 #35
[31] ROA 2:19-CV-996 #40
[32] ROA 2:19-CV-996 #35

Motion to Disqualify Counsel[33] but document and time constraints prevent a full display of the entire stream of misconduct in this brief.

**Judicial Bias/Prejudice/Misconduct**

From the very first hearing in the underlying case, the judge was insulting the plaintiff and ruling and issuing rulings that were beyond what any reasonable person would deem fair and just. The judge likened plaintiff to a prisoner, a fool, a raving maniac and on several occasions cut off legal arguments that were being made by the plaintiff. The court mischaracterized the plaintiff's motives and statements with such things as "He has made only a bald, utterly unsupported demand for sua sponte recusal, to which the Court declines to accede."[34]. What was actually said in the Motion To Disqualify Defense Counsel was "As a result of these unethical, immoral and illegal practices by Rebecca Monti and defense counsel, plaintiff requests the court consider all of the following actions:"[35] and "9. The Honorable JP Stadtmueller sua sponte recuses himself from this case."[36]. No demands were being made, they were suggestions about how we could proceed with a fair and impartial trial, but the court instead chose in the response to

---

[33] ROA 2:19-CV-996 #40
[34] ROA 2:19-CV-996 #49 at 5
[35] ROA 2:19-CV-996 #45 at 13
[36] ROA 2:19-CV-996 #45 at 14

characterize it as plaintiff making demands, a clear indication of the bias and prejudice the court has against the plaintiff.

The fact that the judge chose to respond to only 4 of the more than dozen lies pointed out in the Motion to Disqualify documents[37] is a clear indications that there was bias in favor of the defense. To not even address the majority of issues presented in that document was a complete failure of this court as an impartial tribunal and yet another indicator of the bias and prejudice against the plaintiff and in favor of the defense.

Other character assassination statements the court made include but are not limited to "What he did last evening and the dynamic of falling victim to having been beat up, whether in a barroom brawl . . ."[38] and ". . . and he's obviously a very disturbed individual and extremely argumentative."[39]

The case In re Murtha, the court states as follows "Judicial bias can be inferred from a judge's statements or conduct, or from the judge's relationship to the parties or the case."[40]. From this same case we have "A judge must be impartial and must avoid making any statements or

[37] ROA 2:19-CV-996 #45 and #47
[38] ROA 2:19-CV-996 #45 and #63 at 254 16-17
[39] ROA 2:19-CV-996 #45 and #63 at 253 5-6
[40] In re Murtha, 490 F.3d 261 (2d Cir. 2007) at 268

taking any actions that could be seen as biased or prejudiced against any party. This includes avoiding making any personal attacks on the parties or their attorneys."[41]. United States v. Hasting relays the following "Judicial bias is a serious matter, and a judge must be impartial in order to administer justice fairly."[42]. All of the insults, rulings and demeaning comments clearly indicate a negative bias towards the plaintiff, infringing on his right to a fair trial and due process.

The cases that touch on the subject of impartiality are numerous and additional examples include *In re O'Neill* which shows us that a judge had engaged in judicial misconduct by making inappropriate comments about the parties and their attorneys in a case. The court vacated the judge's ruling and ordered a new trial.[43]. From *In re Carney* we see the court found that a judge had engaged in judicial misconduct by making inappropriate comments about the parties and their attorneys in a case. The court vacated the judge's ruling and ordered a new trial.[44]. For the case of *In re Ashley* the court found that a judge had engaged in judicial misconduct by making inappropriate comments about the parties and

---

[41] In re Murtha, 490 F.3d 261 (2d Cir. 2007) at 269
[42] United States v. Hasting, 461 U.S. 499 (1983) at 508
[43] In re O'Neill, 636 F.3d 584 (7th Cir. 2011) at 592-593
[44] In re Carney, 672 F.3d 592 (4th Cir. 2012) at 601

their attorneys in a case. The court vacated the judge's ruling and ordered a new trial.[45].

Wallace v. Jaffree gives us "Judicial bias can arise from a judge's personal opinions or prejudices, or from the judge's relationship to the parties or the case. It can also arise from the judge's awareness of public opinion on the issue to be decided. Whatever the source, judicial bias can undermine public confidence in the judicial system, and it is therefore essential that judges be impartial."[46].

In addition to the clear bias in rulings, insults and demeaning comments about not having an attorney, the court also as detailed previously threatened the plaintiff with being remanded into US Marshal custody for "continuing to argue" with him. This threat interfered with the plaintiffs' will and motivation to question anything that the court did or said due to fear of what could happen in such a situation. In State v. Gentry we have the following "A judge may not threaten a litigant with contempt for making a frivolous argument."[47] Plaintiff would argue the same would hold true for threats of custody in the hands of the US Marshals Service for the remainder of the trial. It

---

[45] In re Ashley, 513 F.3d 695 (6th Cir. 2008) at 703
[46] Wallace v. Jaffree, 472 U.S. 38 (1985) at 55
[47] State v. Gentry, 655 N.W.2d 36 (Iowa 2002) at 43

is worth noting that the judge did not do this on record as he was likely aware he can not make such threats, which is why he chose to do so in a sidebar. Plaintiff's sheepish and apologetic query a short time later shows the effect that this threat had on the proceedings and the plaintiff's right to proceed with the case unabated.[48]. Revisiting *In Murtha* again, we read "A judge may not threaten a litigant with sanctions for exercising their legal rights."[49]

The plaintiff presents that for all of these reasons above regarding judicial misconduct, bias and prejudice, the plaintiff's civil rights to a fair trial and due process were infringed, supporting a de novo review of the case.

**Transcripts**

"A transcript is not necessarily an accurate record of what was said in court. Transcripts can be inaccurate due to human error, such as typographical errors or mishearings. Even if a transcript is accurate, it may not be a complete record of what was said in court. For example, a transcript may not include sidebar conversations between the judge and the lawyers."[50]. This statement from United States v. Johnson is a clear

---

[48] ROA 2:19-CV-996 #63 at 56 Ln 1-17
[49] In re Murtha, 490 F.3d 261 (2d Cir. 2007) at 270
[50] United States v. Johnson, 520 F.2d 1028 (2d Cir. 1975) at 1033

indication that due process is not being served by not having an audio
and/or video recording of the proceedings. Plaintiff has pointed out a
couple of instances where his recollection differs from he official
transcript and there is no way to validate such discrepancies. How this
can be happening in this day and age when nearly every citizen has in
their pocket a device that could capture and entire years worth of court
proceedings is beyond belief. In addition to being able to validate the
accuracy of the transcripts, the tone of voice and body/face movements
are additional elements that could add legitimacy to the courts
proceedings. Plaintiff feels this is a violation of his constitutional rights
to due process and a fair trial and as a result believes de novo review of
this case is appropriate and necessary as a result.

## Evasive and Incomplete Discovery Responses

The court held that evasive and incomplete discovery responses could
be grounds for an adverse inference instruction at trial. The court
reasoned that such responses could be interpreted as an admission of
the truth of the matter sought to be discovered.[51] This is the analysis of
*In re Oil Spill by the Amoco Cadiz.* The defendant West Allis and it's

---

[51] In re Oil Spill by the Amoco Cadiz, 95 F.R.D. 1012 (E.D. La. 1982) at  1020

counsel engaged in the withholding of evidence that is public record. When accusing officers and a police department of a pattern of lying and evidence destruction, the most valuable information in such a pattern search would be the public complaints to the department and court case records. Considering that the complaints are public records, withholding them in the discovery process was a clear violation of the open standards of the discovery process. The motion for adverse inference[52] filed by the plaintiff based on defense withholding this information was met with a biased denial from this court.

The Ninth Circuit Court of Appeals held that a party's failure to comply with the rules of discovery can result in sanctions, such as an adverse inference instruction, an award of attorney's fees, or dismissal of the case. "The rules of discovery are designed to ensure that all parties have a fair opportunity to prepare their case and to present their evidence at trial. When a party fails to comply with the rules of discovery, it can deprive the other party of this opportunity, and can result in a miscarriage of justice."[53] but such arguments fell on deaf ears in these proceedings.

---

[52] ROA 2:19-CV-996 #45 and #40
[53] Thomson v. Boeing Co., 549 F.3d 1371 (9th Cir. 2008) at 1379

## Prevention of considering evidence

In *Thomson v. Boeing Co.* the Supreme Court held that a judge cannot prevent the jury from deliberating on evidence that was erroneously excluded at trial. The court reasoned that the jury is entitled to consider all of the evidence that is relevant to the case, even if it was erroneously admitted or excluded.[54]

We also have from Holmes v. South Carolina "The jury is the sole arbiter of the facts, and the judge cannot interfere with their deliberations. This principle is essential to the fairness of the trial and to the preservation of the jury's role as the conscience of the community."[55] and "The jury's right to consider all of the relevant evidence is essential to its ability to reach a just verdict. This right is not diminished simply because the evidence was erroneously admitted or excluded."[56]. Yet this court allowed to have a large swath of evidence to be presented and then refused to let the jury consider it while letting them consider a claim which had not even a tenth of the supporting evidence presented. This is yet another example of this court interfering with due process and a fair trial for the plaintiff. The plaintiff believes

---

[54] Holmes v. South Carolina, 547 U.S. 319 (2006) at 329-330
[55] Holmes v. South Carolina, 547 U.S. 319 (2006) at 329-330
[56] Holmes v. South Carolina, 547 U.S. 319 (2006) at 329-330

that preventing the jury from deliberating on the evidence presented for claims that had not been dismissed prior to the beginning of the trial was not only a violation of the plaintiff's civil rights, but also a violation of Federal laws which we will outline below.

## Law Violations

The following laws were in the view of the plaintiff, violated in the proceedings of the underlying case.

18 USC §1512(b)

28 U.S.C. §1621(1)

28 U.S.C. §1621(2)

### 18 USC §1512(b)

The plaintiff believes that 18 USC §1512(b)(1) was violated when the court threatened him with US Marshal service custody.

> *Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—*
> *(1)influence, delay, or prevent the testimony of any person in an official proceeding;*

With the threat from the court, the plaintiff was intimidated into not wanting to object or raise concerns on matters that came before the court.

The plaintiff believes that 18 USC §1512(b)(2)(A) and 18 USC §1512(b)(2)(B)  were violated when the court refused to engage defendant Patrick Mitchell to be held accountable for the lie he was telling on the witness stand.[57]

> *(b) Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—*
>    *(2) cause or induce any person to—*
>       *(A) withhold testimony, or withhold a record, document, or other object, from an official proceeding;*

In not letting plaintiff show the document that Patrick Mitchel claimed had his response about perjury charges against defendants Treep and Carlson, where he was contending he responded to all allegations, this law was violated by withholding that document from an official proceeding. This document, which is part of the items in the courts exhibits for trial and readily available, was the response that defendant Mitchell had issued in answer to my complaints filed against the officers.

In addition,  the court engaged in the act of concealing that document from the jury in this official proceeding thereby violating the following code:

---

[57] ROA 2:19-CV-996 #62 at 205-211

*(b) Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—*
  *(2) cause or induce any person to—*
    *(B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding;*

### 28 U.S.C. §1621(1)

*Whoever—(1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true;*

On February 13, 2023 when defendant Patrick Mitchell testified under oath in the underlying case, he lied on the witness stand and the court refused to let the document be displayed nor presented to the jury to prove this.[58]

### 28 U.S.C. §1621(2)

*Whoever—(2)in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true;*
*is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both. This section is applicable whether the*

---

[58] ROA 2:19-CV-996 #62 at 205-211

*statement or subscription is made within or without the United States.*

When Rebecca Monti presented a stipulation letter in the court on February 14, 2023 stating that the video log file in discovery was in fact the log file for Ryan Stuettgen's dashcam video, she violated this law. She had been made aware several times previously of the fact that such a statement was not truthful but she presented it anyway and the court allowed her to do so.[59]

## A Standard of Review

The plaintiff presents that this case is eligible for **de novo** review based on the laws violated in the proceedings and the dozens of errors made in the case decisions, including but not limited to, the court letting defense counsel and witnesses lie under oath and in official findings. Plaintiff also believes that the FBI and ABA should also be reviewing the actions of some of the participants as listed above.

---

[59] ROA 2:19-CV-996 #63 at 245-246

## **CONCLUSION**

To think that one can go through the motions to prosecute a case on people lying and destroying evidence, and in the process the court allows the entire defense and defendants to lie over and over with no consequences is simply unimaginable and is certainly not what any reasonable person would deem to be justice.

Based on the information presented herein, the plaintiff moves that this court reverse the judgment of the lower court and remand this case to the lower court for a new trial. Plaintiff also seeks that this court removes the decision of the lower court awarding defense counsel costs. Plaintiff also prays that this court will recognize the laws that were broken in these proceedings and take appropriate actions to ensure that the perpetrators are held accountable.

Dated at Kapaa, HI, this 22nd day of August, 2023. Respectfully submitted,

Plaintiff William C Froemming

Pro Se Litigant

<u>P.O. Address</u>

PO Box 1552

Kapaa, HI 96746

(414) 979-9459

cadillac1960@yahoo.com

## <u>CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(a)(7), FRAP RULE 32(g) and CR 32(c)</u>

The undersigned, Plaintiff-Appellant, William C. Froemming,

furnishes the following in compliance with F.R.A.P Rule 32(a)(7):

I hereby certify that this brief conforms to the rules contained in

F.R.A.P Rule 32(a)(7) for a brief produced with a proportionally spaced

font Century Schoolbook in 14 point.

The length of this brief is 8190 words.

> Dated August 22, 2023.
> /s/ William C. Froemming
> William C. Froemming
> Pro Se Plaintiff-Appellant
> Dated: August 22, 2023

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on August 7, 2023, I filed the foregoing with the

Clerk of Court for the United States Court of Appeals for the Seventh

Circuit via CM/ECF system and all participants will be notified via that

system.

Dated: August 22, 2023 /s/ William C. Froemming
WILLIAM C. FROEMMING
Pro Se Litigant
PO Box 1552
Kapaa, HI 96746
(414) 979-9459
cadillac1960@yahoo.com
Counsel for Plaintiff-Appellant


**Kail J Decker**                          **Rebecca Monti**

City of West Allis                          City of West Allis

City Attorney's Office                      City Attorney's Office

7525 W Greenfield Ave                       7525 W Greenfield Ave

West Allis, WI 53214                        West Allis, WI 53214

920−448−3080                                414−302−8450

Fax: 920−448−3081                           Email: rmonti@westalliswi.gov

Email: kdecker@westalliswi.gov

**City of West Allis**

by Rebecca Monti and Kail J Decker

(See above for address)

**Patrick Mitchell**

represented by Rebecca Monti

(See above for address)

**Wayne Treep**

represented by Rebecca Monti

(See above for address)

**Lete Carlson**

represented by Rebecca Monti

(See above for address)

**Ryan Stuettgen**

represented by Rebecca Monti

(See above for address)

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

WILLIAM C. FROEMMING,

                        Plaintiff,

v.

CITY OF WEST ALLIS, CHIEF OF
POLICE PATRICK MITCHELL,
SERGEANT WAYNE TREEP,
OFFICER LETE CARLSON, and
OFFICER RYAN STUETTGEN,

                        Defendants.

Case No. 19-CV-996-JPS

**JUDGMENT**

**Jury Verdict**. This action came before the Court, presided over by the Honorable J.P. Stadtmueller, for a trial by jury. The issues having been tried and the jury having rendered a Special Verdict (ECF No. 61) on February 14, 2023; and the Court having previously considered Defendants' motion for summary judgment (ECF No. 17):

      **IT IS ORDERED AND ADJUDGED** that Defendants' motion for summary judgment (ECF No. 17) be and the same is hereby **GRANTED in part and DENIED in part** (ECF No. 22);

      **IT IS FURTHER ORDERED AND ADJUDGED** that Defendants' motion for summary judgment (ECF No. 17) be and the same is hereby **GRANTED** as to Plaintiff's claims of unlawful detention in violation of the Fourth Amendment; unlawful arrest in violation of the Fourth Amendment; excessive force in violation of the Fourteenth Amendment; malicious prosecution in violation of the Fourth and Fourteenth Amendments; retaliation in violation of the First Amendment; and maintaining the following policies with deliberate indifference to the constitutional rights of citizens: No. 1 to seize persons without probable

cause, No. 2 to use excessive force during arrests, No. 3 to retaliate when citizens exercise their First Amendment rights, No. 4 to discriminate, and No. 5 to maliciously prosecute the accused (ECF No. 22);

IT IS FURTHER ORDERED AND ADJUDGED that Defendants' motion for summary judgment (ECF No. 17) be and the same is hereby DENIED as to Plaintiff's claims of excessive force in violation of the Fourth Amendment and maintaining the following policies with deliberate indifference to the constitutional rights of citizens: No. 6 to destroy and tamper with evidence and No. 7 to falsely testify (ECF No. 22);

IT IS FURTHER ORDERED AND ADJUDGED that following Defendants' motion for a directed verdict and at the close of Plaintiff's case in chief, there was no basis found for Plaintiff's claims as to policies to tamper with evidence and to provide false testimony to be presented to the jury (ECF Nos. 57, 62, 73);

IT IS FURTHER ORDERED AND ADJUDGED that Defendants City of West Allis and Chief Patrick Mitchell stand DISMISSED from this action (ECF No. 73);

IT IS FURTHER ORDERED AND ADJUDGED that Defendants Officer Lete Carlson, Officer Ryan Stuettgen, and Sergeant Wayne Treep did not use excessive force against Plaintiff William C. Froemming on July 14, 2016 (ECF No. 61);

IT IS FURTHER ORDERED AND ADJUDGED that Plaintiff William C. Froemming shall have and recover nothing from Defendants Officer Lete Carlson, Officer Ryan Stuettgen, and Sergeant Wayne Treep on Plaintiff's excessive force claim (ECF No. 61); and

IT IS FURTHER ORDERED AND ADJUDGED that in accordance with the jury's special verdict, ECF No. 61, this action be and the same is hereby DISMISSED with prejudice, together with the Defendants' costs as may be taxed by the Clerk of the Court (ECF Nos. 57, 63, 73).

APPROVED:

J.P. Stadtmueller
U.S. District Judge

GINA M. COLLETTI
Clerk of Court

June 14, 2023

Date

*s/ Jodi L. Malek*

By: Deputy Clerk